## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

| | |
|---|---|
| DAVID A. PUSKALA, Individually and on Behalf of All Others Similarly Situated, | No. |
| Plaintiff, | CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS |
| v. | |
| KOSS CORPORATION, MICHAEL J. KOSS, and SUJATA ("Sue") SACHDEVA, | |
| Defendants. | |
| | JURY TRIAL DEMAND |

Plaintiff, David A. Puskala, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Koss Corporation ("Koss" or the "Company"), with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Koss; and (c) review of other publicly available information concerning Koss.

## NATURE OF THE ACTION AND OVERVIEW

1. This is a federal class action on behalf of purchasers of Koss securities between July 12, 2005 and December 21, 2009, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2. Koss markets a complete line of high-fidelity stereophones, speaker-phones,

computer headsets, telecommunications headsets, active noise canceling stereophones, wireless stereophones and compact disc recordings of American Symphony Orchestras on the Koss Classics label.

3.     On December 21, 2009, the Company shocked investors when it announced that NASDAQ had halted trading of Koss stock at the Company's request after information was discovered regarding certain unauthorized transactions at the Company. Moreover, the Company announced that the Board of Directors had appointed a special committee of independent directors to lead an internal investigation involving the unauthorized transactions and to determine the effect on Koss' financial statements. Additionally, Koss announced that Defendant Sujata "Sue" Sachdeva ("Sachdeva"), Vice President of Finance and Secretary of Koss, as well as its Principal Accounting Officer, had been placed on unpaid administrative leave pending the results of the investigation.

4.     Thereafter, the federal government filed a criminal complaint against Defendant Sachdeva for wire fraud in connection with her alleged use of Company money to pay her personal credit card charges for pricey jewelry, high-end women's clothing and expensive household items. According to the government's complaint, during the last two years, Defendant Sachdeva embezzled more than $4.5 million from the Company and used the money to pay for shopping sprees at upscale stores.

5.     With trading in the Company's stock halted, Plaintiff and other investors in Koss's securities were stuck holding their illiquid investments as the Company slowly began revealing the details of an unimaginable shopping spree – spanning more than four years and exceeding $31 million – which Defendant Sachdeva had done at the shareholders' expense.

6.     On December 24, 2009, the Company announced that the scope of the Company's

2

internal investigation had been expanded to include fiscal years since 2006 and the Company preliminarily estimated that the amount of unauthorized transactions may have exceeded $20 million, and that it would have to restate certain previously issued financial statements. Further, the Company disclosed that following the discovery of unauthorized financial transactions, Defendant Sachdeva had been terminated and two members of the Company's accounting staff who served under Defendant Sachdeva had been placed on unpaid administrative leave.

7.     On January 4, 2010, the Company announced that its internal investigation had been expanded to include the fiscal year 2005 and preliminarily estimated that the amount of the transactions since then had exceeded $31 million. Koss further announced that it had dismissed Grant Thorton LLP as its independent auditors and that its previously issued financial statements for the fiscal years ended June 30, 2005 through 2009 and the three months ended September 30, 2009, should no longer be relied upon due to the unauthorized financial transactions.

8.     On January 11, 2009, Koss announced the preliminary and unaudited estimates of the unauthorized transactions by Defendant Sachdeva from the fiscal year 2005 through the present and indicated that some unauthorized transactions occurred prior to fiscal year 2005. Koss disclosed the following preliminary and unaudited estimates of the total amounts of unauthorized transactions identified from fiscal year 2005 through the present:

| | |
|---|---|
| FY 2005: | $2,195,477 |
| FY 2006: | $2,227,669 |
| FY 2007: | $3,160,310 |
| FY 2008: | $5,040,968 |
| FY 2009: | $8,485,937 |
| Q1 FY 2010: | $5,326,305 |
| Q2 FY 2010: | $4,917,005 |

9.     Thereafter, NASDAQ announced that at approximately 2:00 p.m., Eastern Time, that day, Koss's stock was scheduled to resume after being halted approximately three weeks

earlier on December 21, 2009, at $5.51 per share.

10. When trading in Koss's stock finally resumed, shares of the Company's stock declined $1.32 per share, approximately 24%, to close on January 11, 2010, at $4.19 per share, on unusually heavy volume.

11. Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (1) that Defendant Sachdeva and certain employees of the Company had devised and carried out a scheme to defraud investors and divert Company funds potentially exceeding $31 million; (2) that the Company's financial statements and corporate bank account balances had been manipulated to conceal the diversion of corporate funds; (3) that, as a result, the Company's financial results were overstated during the Class Period; (4) that the Company's financial results were not prepared in accordance with Generally Accepted Accounting Principles ("GAAP"); (5) that the Company lacked adequate internal and financial controls; and (6), as a result of the above, that the Company's financial statements were materially false and misleading at all relevant times.

12. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

13. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

4

14. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. §78aa).

15. Venue is proper in this Judicial District pursuant to §28 U.S.C. §1391(b), §27 of the Exchange Act (15 U.S.C. §78aa(c)).

16. Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391(b) and Section 27 of the Exchange Act (15 U.S.C. §78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts charged herein, including the preparation and dissemination of materially false and/or misleading information, occurred in substantial part in this District. Additionally, Koss maintains its principal executive offices within this Judicial District.

17. In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

18. Plaintiff David A. Puskala, as set forth in the accompanying certification, incorporated by reference herein, purchased Koss common stock during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

19. Defendant Koss is a Delaware corporation with its principal executive offices located at 4129 North Port Washington Avenue, Milwaukee, Wisconsin.

20. Defendant Michael J. Koss (" M.J. Koss") was, at all relevant times, Chief Executive Officer ("CEO"), Chief Financial Officer ("CFO"), President and a director of Koss.

5

21. Defendant Sujata "Sue" Sachdeva ("Sachdeva ") was, at all relevant times, the Principal Accounting Officer, Secretary and Vice President Finance of Koss.

22. Defendants M.J. Koss and Sachdeva are collectively referred to hereinafter as the "Individual Defendants." The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Koss' reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. Each Individual Defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of these Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

## SUBSTANTIVE ALLEGATIONS

### Background

23. Koss designs, manufactures, and markets high-fidelity stereophones, computer headsets, speaker-phones, telecommunications headsets, active noise canceling stereophones, wireless stereophones and compact disc recordings of American Symphony Orchestras on the Koss Classics label.

6

## Materially False and Misleading
## Statements Issued During the Class Period

24.     The Class Period begins on July 12, 2005. On this day, Koss issued a press release

entitled, "Koss Posts Record 4th Quarter Sales as Shipments to Europe Jump 121%." Therein,

the Company, in relevant part, reported its financial results for the 2005 fiscal year and fourth

quarter.

25.     On September 28, 2005, Koss filed its Annual Report with the SEC on Form 10-K

for the 2005 fiscal year. The Company's Form 10-K was signed by Defendants M.J. Koss and

Sachdeva, and reaffirmed the Company's financial results previously announced on July 12,

2005. The Company's Form 10-K included a Sarbanes-Oxley required certification, signed by

M.J. Koss, who certified:

1.     I have reviewed this annual report on Form 10-K of Koss Corporation;

2.     Based on my knowledge, this report does not contain any untrue statement
of a material fact or omit to state a material fact necessary to make the statements
made, in light of the circumstances under which such statements were made, not
misleading with respect to the period covered by this report;

3.     Based on my knowledge, the financial statements, and other financial
information included in this report, fairly present in all material respects the
financial condition, results of operations and cash flows of the registrant as of,
and for, the periods presented in this report;

4.     I am responsible for establishing and maintaining disclosure controls and
procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) for the
registrant and have:

     a)     designed such disclosure controls and procedures, or caused such
disclosure controls and procedures to be designed under my supervision, to ensure
that material information relating to the registrant, including its consolidated
subsidiaries, is made known to me by others within those entities, particularly
during the period in which this report is being prepared;

     b)     evaluated the effectiveness of the registrant's disclosure controls
and procedures and presented in this report my conclusions about the
effectiveness of the disclosure controls and procedures, as of the end of the period

7

covered by this report based on such evaluation; and

      c)    disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.    I have disclosed, based on my most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

      a)    all significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

      b)    any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

26.    On October 10, 2005, Koss issued a press release entitled "Koss Posts Record First Quarter on 33% Increase in Sales." Therein, the Company, in relevant part, reported its financial results for the 2006 fiscal first quarter.

27.    On November 14, 2005, Koss filed its Quarterly Report with the SEC on Form 10-Q for the 2006 fiscal first quarter. The Company's Form 10-Q was signed by Defendants M.J. Koss and Sachdeva, and reaffirmed the Company's financial results previously announced on October 10, 2005. The Company's Form 10-Q included a Sarbanes-Oxley required certification, signed by M.J. Koss and substantially similar to the certification described in ¶25, *supra*.

28.    On January 16, 2006, Koss issued a press release entitled "Koss Second Quarter Sales Jump 51%." Therein, the Company, in relevant part, reported its financial results for the 2006 fiscal second quarter.

29.    On February 14, 2006, Koss filed its Quarterly Report with the SEC on Form

10-Q for the 2006 fiscal second quarter. The Company's Form 10-Q was signed by Defendants M.J. Koss and Sachdeva, and reaffirmed the Company's financial results previously announced on January 16, 2006. The Company's Form 10-Q included a Sarbanes-Oxley required certification, signed by M.J. Koss and substantially similar to the certification described in ¶25, *supra*.

30. On April 12, 2006, Koss issued a press release entitled "Koss Third Quarter Net Income Jumps 69% on Record Sales." Therein, the Company, in relevant part, reported its financial results for the 2006 fiscal third quarter.

31. On May 15, 2006, Koss filed its Quarterly Report with the SEC on Form 10-Q for the 2006 fiscal second quarter. The Company's Form 10-Q was signed by Defendants M.J. Koss and Sachdeva, and reaffirmed the Company's financial results previously announced on April 12, 2006. The Company's Form 10-Q included a Sarbanes-Oxley required certification, signed by M.J. Koss and substantially similar to the certification described in ¶25, *supra*.

32. On July17, 2006, Koss issued a press release entitled "Koss Fiscal Year Sets New Records." Therein, the Company, in relevant part, reported its financial results for the 2006 fiscal year and fourth quarter.

33. On September 6, 2006, Koss filed its Annual Report with the SEC on Form 10-K for the 2006 fiscal year. The Company's Form 10-K was signed by Defendants M.J. Koss and Sachdeva, among others, and reaffirmed the Company's financial results previously announced on July 17, 2006. The Company's Form 10-K included a Sarbanes-Oxley required certification, signed by M.J. Koss and substantially similar to the certification described in ¶25, *supra*.

34. On October 5, 2006, Koss issued a press release entitled "Koss Posts Record First Quarter on 12% Increase in Sales." Therein, the Company, in relevant part, reported its financial

results for the 2007 fiscal first quarter.

35.     On November 13, 2006, Koss filed its Quarterly Report with the SEC on Form 10-Q for the 2007 fiscal first quarter. The Company's Form 10-Q was signed by Defendants M.J. Koss and Sachdeva, and reaffirmed the Company's financial results previously announced on October 5, 2007. The Company's Form 10-Q included a Sarbanes-Oxley required certification, signed by M.J. Koss and substantially similar to the certification described in ¶25, *supra*.

36.     On January 11, 2007, Koss issued a press release entitled "Koss Announces Second Quarter Results." Therein, the Company, in relevant part, reported its financial results for the 2007 fiscal second quarter.

37.     On February 12, 2007, Koss filed its Quarterly Report with the SEC on Form 10-Q for the 2007 fiscal second quarter. The Company's Form 10-Q was signed by Defendants M.J. Koss and Sachdeva, and reaffirmed the Company's financial results previously announced on January 11, 2007. The Company's Form 10-Q included a Sarbanes-Oxley required certification, signed by M.J. Koss and substantially similar to the certification described in ¶25, *supra*.

38.     On April 10, 2007, Koss issued a press release entitled "Koss Third Quarter Net Sales and Earnings Drop." Therein, the Company, in relevant part, reported its financial results for the 2007 fiscal third quarter.

39.     On May 11, 2007, Koss filed its Quarterly Report with the SEC on Form 10-Q for the 2007 fiscal third quarter. The Company's Form 10-Q was signed by Defendants M.J. Koss and Sachdeva, and reaffirmed the Company's financial results previously announced on April 10, 2007. The Company's Form 10-Q included a Sarbanes-Oxley required certification, signed by

M.J. Koss and substantially similar to the certification described in ¶25, *supra*.

40.     On July 16, 2007, Koss issued a press release entitled "Koss 4th Quarter EPS Up 15%." Therein, the Company, in relevant part, reported its financial results for the 2007 fiscal year and fourth quarter.

41.     On August 20, 2007, Koss filed its Annual Report with the SEC on Form 10-K for the 2007 fiscal year. The Company's Form 10-K was signed by Defendants Koss and Sachdeva, among others, and reaffirmed the Company's financial results previously announced on July 16, 2007. The Company's Form 10-K included a Sarbanes-Oxley required certification, signed by M.J. Koss and substantially similar to the certification described in ¶25, *supra*.

42.     On October 8, 2007, Koss issued a press release entitled "Koss Q1 Sales Dip 5% on Sluggish Shipments to Europe." Therein, the Company, in relevant part, reported its financial results for the 2008 fiscal first quarter.

43.     On November 14, 2007, Koss filed its Quarterly Report with the SEC on Form 10-Q for the 2008 fiscal first quarter. The Company's Form 10-Q was signed by Defendants M.J. Koss and Sachdeva, and reaffirmed the Company's financial results previously announced on October 8, 2007. The Company's Form 10-Q included a Sarbanes-Oxley required certification, signed by M.J. Koss and substantially similar to the certification described in ¶25, *supra*.

44.     On January 15, 2008, Koss issued a press release entitled "Koss Q2 EPS Matches 2006." Therein, the Company, in relevant part, reported its financial results for the 2008 fiscal second quarter.

45.     On February 14, 2008, Koss filed its Quarterly Report with the SEC on Form 10-Q for the 2008 fiscal second quarter. The Company's Form 10-Q was signed by Defendants

M.J. Koss and Sachdeva, and reaffirmed the Company's financial results previously announced on January 15, 2008. The Company's Form 10-Q included a Sarbanes-Oxley required certification, signed by M.J. Koss and substantially similar to the certification described in ¶25, *supra*.

46.     On April 8, 2008, Koss issued a press release entitled "Koss Q3 Net Income Slips Despite Sales Increase." Therein, the Company, in relevant part, reported its financial results for the 2008 fiscal third quarter.

47.     On May 15, 2008, Koss filed its Quarterly Report with the SEC on Form 10-Q for the 2008 fiscal third quarter. The Company's Form 10-Q was signed by Defendants M.J. Koss and Sachdeva, and reaffirmed the Company's financial results previously announced on April 8, 2008. The Company's Form 10-Q included a Sarbanes-Oxley required certification, signed by M.J. Koss and substantially similar to the certification described in ¶25, *supra*.

48.     On July 14, 2008, Koss issued a press release entitled "Koss 4th Quarter Net Sales Up 10%." Therein, the Company, in relevant part, reported its financial results for the 2008 fiscal year and fourth quarter.

49.     On August 25, 2008, Koss filed its Annual Report with the SEC on Form 10-K for the 2008 fiscal year. The Company's Form 10-K was signed by Defendants M.J. Koss and Sachdeva, and reaffirmed the Company's financial results previously announced on July 14, 2008. The Company's Form 10-K included a Sarbanes-Oxley required certification, signed by M.J. Koss and substantially similar to the certification described in ¶25, *supra*.

50.     On October 6, 2008, Koss issued a press release entitled "Koss First Quarter Sales Drop 9%." Therein, the Company, in relevant part, reported its financial results for the 2009 fiscal first quarter.

51. On November 14, 2008, Koss filed its Quarterly Report with the SEC on Form 10-Q for the 2009 fiscal first quarter. The Company's Form 10-Q was signed by Defendants M.J. Koss and Sachdeva, and reaffirmed the Company's financial results previously announced on October 6, 2009. The Company's Form 10-Q included a Sarbanes-Oxley required certification, signed by M.J. Koss and substantially similar to the certification described in ¶25, *supra*.

52. On January 14, 2009, Koss issued a press release entitled "Koss Second Quarter Sales and Profits Fall." Therein, the Company, in relevant part, reported its financial results for the 2009 fiscal second quarter.

53. On February 12, 2009, Koss filed its Quarterly Report with the SEC on Form 10-Q for the 2009 fiscal second quarter. The Company's Form 10-Q was signed by Defendants M.J. Koss and Sachdeva, and reaffirmed the Company's financial results previously announced on January 14, 2009. The Company's Form 10-Q included a Sarbanes-Oxley required certification, signed by M.J. Koss and substantially similar to the certification described in ¶25, *supra*.

54. On April 15, 2009, Koss issued a press release entitled "Koss Third Quarter Remains Profitable Despite Impact of Recession." Therein, the Company, in relevant part, reported its financial results for the 2009 fiscal third quarter.

55. On May 8, 2009, Koss filed its Quarterly Report with the SEC on Form 10-Q for the 2009 fiscal third quarter. The Company's Form 10-Q was signed by Defendants M.J. Koss and Sachdeva, and reaffirmed the Company's financial results previously announced on April 15, 2009. The Company's Form 10-Q included a Sarbanes-Oxley required certification, signed by M.J. Koss and substantially similar to the certification described in ¶25, *supra*.

56.     On July 20, 2009, Koss issued a press release entitled "Koss Continues to Remain Profitable Despite Recession Setbacks." Therein, the Company, in relevant part, reported its financial results for the 2009 fiscal year and fourth quarter.

57.     On August 26, 2009, Koss filed its Annual Report with the SEC on Form 10-K for the 2009 fiscal year. The Company's Form 10-K was signed by Defendants M.J. Koss and Sachdeva, among others, and reaffirmed the Company's financial results previously announced on July 20, 2009. The Company's Form 10-K included a Sarbanes-Oxley required certification, signed by M.J. Koss and substantially similar to the certification described in ¶25, *supra*.

58.     On October 13, 2009, Koss issued a press release entitled "Koss Sales and Earnings Down on Slow Domestic Sales." Therein, the Company, in relevant part, reported its financial results for the 2010 fiscal first quarter.

59.     On November 6, 2009, Koss filed its Quarterly Report with the SEC on Form 10-Q for the 2010 fiscal first quarter. The Company's Form 10-Q was signed by Defendants M.J. Koss and Sachdeva, and reaffirmed the Company's financial results previously announced on October 13, 2009. The Company's Form 10-Q included a Sarbanes-Oxley required certification, signed by M.J. Koss and substantially similar to the certification described in ¶25, *supra*.

60.     Defendants' statements described in ¶¶24-59, above, were materially false and/or misleading when made because Defendants failed to disclose or indicate the following: (1) that Defendant Sachdeva and certain employees of the Company had devised and carried out a scheme to defraud investors and divert Company funds potentially exceeding $20 million; (2) that the Company's financial statements and corporate bank account balances had been manipulated to conceal the diversion of corporate funds; (3) that, as a result, the Company's

14

financial results were overstated during the Class Period; (4) that the Company's financial results were not prepared in accordance with GAAP; (5) that the Company lacked adequate internal and financial controls; and (6), as a result of the above, that the Company's financial statements were materially false and misleading at all relevant times.

## Disclosures At The End Of The Class Period

61.     On December 21, 2009, Koss issued a press release entitled "Trading of Koss Corporation Stock Halts." Therein, the Company, in relevant part, stated:

> Milwaukee, Wisconsin: Koss Corporation (NASDAQ SYMBOL: KOSS), the U.S. based high-fidelity stereophone leader, requested today that NASDAQ immediately halt trading of its securities after discovering information regarding certain unauthorized transactions. The Board of Directors appointed a special committee of independent directors to lead an internal investigation involving the unauthorized transactions and determine the effect, if any, on Koss' financial statements. NASDAQ halted trading of Koss Corporation stock today. Law enforcement is also assisting Koss Corporation with this matter. Sujata Sachdeva, Vice President of Finance and Secretary of Koss Corporation, was placed on unpaid administrative leave pending the results of this investigation.

62.     That day, a criminal complaint against Defendant Sachdeva was filed in the United States District Court for the Eastern District of Wisconsin, *United States of America v. Sujata "Sue" Sachdeva*, 2:09-mj-00084-AEG, alleging that, "[d]uring the period from at least January 2008 through December 19, 2009, in the State and Eastern District of Wisconsin, and elsewhere, SUJATA "Sue" SACHDEVA, the defendant, knowingly and intentionally devised, participated in, and executed a scheme to defraud and to obtain money by means of material false and fraudulent pretenses and representations, which scheme was facilitated and carried out through the use of interstate wire communications; all in violation of Title 18, United States Code, Section 1343." Therein, an affidavit by Brian K. Due, a Special Agent with the Federal Bureau of Investigation ("FBI") of the United States Department of Justice assigned to the White Collar Crime squad of the FBI's Milwaukee Division, stated:

[The Company has been] able to determine that numerous purchases have been made by [Defendant] Sachdeva on her personal AMEX cards from the following vendors during the period from January 1, 2008 through December 19, 2009, (dollar amounts are total purchases from each vendor during the above period of time):

a.  $127,400 from A.C Zuckennan Jewelers, located at 1340 W. Mequon Road in Mequon, WI;

b.  $670,000 from Au Courant, a women's clothing store located at 400 W. Silver Spring Dr. In Milwaukee;

c.  $12,500 from Channel BTQ #16 (location unknown);

d.  $83,700 from Cranston, a store located at 250 North Water Street in Milwaukee which specializes in fine home decor;

e.  $14,000 from Georgio-Armani (location unknown);

f.  $213,500 from Gigi of Mequon, located at 1550 West Mequon Road in Mequon, which specializes in bridal wear and expensive women's clothing;

g.  $40,000 from Holzman's Furs, a luxury fur retailer located at 1111 West Mitchell Street in Milwaukee;

h.  $255,000 from Karat 22 Jewelers, a jewelry store based in Houston, Texas;

i.  $132,000 from Kevan Hall, a high-end women's formal wear store based in Los Angeles, CA;

j.  $15,000 from The Watchery Corp., a retailer of luxury watches headquartered in Brooklyn, NY;

k.  $1,358,322.25 from Valentina Boutique, a women's clothing store located at 1505 West Mequon Road in Mequon;

l.  $649,000 from Zita Bridal Salon, located at 211 East Silver Spring Drive in Whitefish Bay, WI.

*     *     *

Koss personnel have determined that between September 2, 2009 and November 25, 2009, wire transfers totaling $4,526,595 were made from the Koss Corporation account at Harris Bank to a bank account maintained by American

Express at JP Morgan Chase Bank in New York. All of the wire transfers were used to make payments on personal [American Express ("AMEX")] accounts in the name of [Defendant] Sujata Sachdeva. Koss Corporation personnel have been able to match up a number of the wire transfer payments directly to payments made on [Defendant] Sachdeva's personal AMEX accounts.

63. On December 24, 2009, Koss issued a press release entitled "Koss Terminates V.P. of Finance and Warns That Financial Statements are Unreliable Since At Least 2006." Therein, the Company, in relevant part, stated:

> Koss Terminates V.P. of Finance and Warns That Financial Statements are Unreliable Since At Least 2006
>
> December 24, 2009 — Milwaukee, Wisconsin: Koss Corporation (NASDAQ SYMBOL:KOSS), the U.S. based high-fidelity stereophone leader, announced that following the discovery of unauthorized financial transactions, Sujata Sachdeva, the Company's Vice President of Finance and Secretary, has been terminated. Ms. Sachdeva served as the Company's Principal Accounting Officer. Also, two members of the Company's accounting staff who served under Ms. Sachdeva were placed on unpaid administrative leave.
>
> The scope of the Company's previously disclosed internal investigation of unauthorized financial transactions has been expanded to include fiscal years since 2006 and to the present. Preliminary estimates indicate that the amount of unauthorized transactions since fiscal year 2006 through the present may exceed $20 million, but at this point the Company and its advisors cannot assess the potential impact on its financial statements or identify the extent that specific fiscal periods may be affected. Nor can the Company and its advisors yet assess the extent of the possible offsets through insurance, asset recoveries and other mechanisms related to the unauthorized transactions. As a result, the Company has concluded that its previously issued financial statements at least since the end of its 2006 fiscal year should no longer be relied upon. The Company plans to restate its financial statements for such periods as further investigation indicates.
>
> The Company's internal investigation, supervised by an independent committee of the board of directors, including the committee's independent counsel and forensic accountants, is continuing, as are efforts to recover merchandise related to the unauthorized transactions. The Company continues to work with law enforcement and regulatory authorities.

64. On December 24, 2009, Koss filed a Current Report with the SEC on Form 8-K. Therein, the Company, in relevant part, stated:

Item 4.02    Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review.

    (a)    On December 24, 2009, the Audit Committee of our Board of Directors of Koss Corporation (the "Company"), on the recommendation of an independent committee of the Board of Directors and its advisors and management, concluded that our previously issued financial statements on Forms 10-K for the fiscal years ended June 30, 2006, 2007, 2008 and 2009 and on Form 10-Q for the three months ended September 30, 2009 should no longer be relied upon because of the discovery of unauthorized financial transactions. An internal investigation under the supervision of an independent committee of the Board of Directors with the assistance of independent counsel and forensic accountants is continuing. The Company has discussed the matters disclosed in this filing with its independent accountant. As promptly as possible, the Company plans to restate its financial statements for such periods as further investigation indicates.

65.    On January 4, 2010, Koss issued a press release entitled "Koss Corporation's

Investigation Expands as Grant Thornton is Dismissed as the Independent Auditors." Therein,

the Company, in relevant part, stated:

    Milwaukee, Wisconsin: Koss Corporation (NASDAQ SYMBOL: KOSS), the U.S. based high-fidelity stereophone leader, announced that the scope of the Company's previously disclosed internal investigation of unauthorized financial transactions by Sujata Sachdeva, the Company's former Vice President of Finance and Secretary, has been expanded to include fiscal years since 2005 through the present. Preliminary estimates indicate that the amount of unauthorized transactions since fiscal year 2005 through the present has exceeded $31 million, but at this point the Company and its advisors cannot assess the potential impact on its financial statements or identify the extent that specific fiscal periods may be affected. Nor can the Company and its advisors yet assess the extent of the possible offsets through insurance, asset recoveries and other mechanisms related to the unauthorized transactions. As a result, the Company has concluded that its previously issued financial statements at least since the end of its 2005 fiscal year should no longer be relied upon. The Company plans to restate its financial statements for at least the last three fiscal years as further investigation indicates.

    On December 31, 2009, upon a recommendation from Koss Corporation's Audit Committee and approved by the Board of Directors, Koss dismissed Grant Thornton LLP as its independent auditors. None of Grant Thornton's audit reports of Koss Corporation's financial statements, including the ones for the past two fiscal years, contained an adverse opinion, a disclaimer of opinion, nor were they qualified or modified as to uncertainty, scope, or accounting principles. The Company is currently evaluating candidates to serve as its independent auditors and anticipates receiving a recommendation from the Audit Committee within the

next week.

The Company's internal investigation, supervised by an independent committee of the Board of Directors, including the committee's independent counsel and forensic accountants, is continuing, as are efforts to recover merchandise related to the unauthorized transactions. The Company continues to work with law enforcement and regulatory authorities.

66.     On January 4, 2009, Koss filed a Current Report with the SEC on Form 8-K.

Therein, the Company, in relevant part, stated:

Item 4.02    Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review.

(a)     The Company's Audit Committee, on the recommendation of its advisors and management, expanded the scope of the Company's previously disclosed internal investigation of unauthorized financial transactions by Sujata Sachdeva, the Company's former Vice President of Finance and Secretary, to include fiscal years 2005 through the present. The Company has now concluded that its previously issued financial statements on Forms 10-K for the fiscal years ended June 30, 2005 through 2009 and on Form 10-Q for the three months ended September 30, 2009 should no longer be relied upon due to the unauthorized financial transactions. An internal investigation under the supervision of an independent committee of the Board of Directors with the assistance of independent counsel and forensic accountants is continuing. Preliminary estimates indicate that the amount of unauthorized transactions since fiscal year 2005 through the present has exceeded $31 million, but at this point the Company and its advisors cannot assess the potential impact on its financial statements or identify the extent that specific fiscal periods may be affected. Nor can the Company and its advisors yet assess the extent of the possible offsets through insurance, asset recoveries and other mechanisms related to the unauthorized transactions. As promptly as possible, the Company plans to restate its financial statements for applicable periods as further investigation indicates.

67.     On January 11, 2010, Koss issued a press release entitled "Koss Corporation

Releases Preliminary Data on Investigation." Therein, the Company, in relevant part, stated:

Milwaukee, Wisconsin: Koss Corporation (NASDAQ SYMBOL: KOSS), the U.S. based high-fidelity stereophone leader, announced preliminary and unaudited estimates of the unauthorized transactions by its former Vice President of Finance and Secretary, Sujata Sachdeva. Ms. Sachdeva's employment was terminated in December 2009.

The Company's internal investigation is being conducted by an independent

committee of the Board of Directors with the assistance of the committee's independent counsel and forensic accountants and is continuing. Although the investigation indicates that some unauthorized transactions occurred prior to fiscal year 2005, Koss's investigation is focused on the fiscal years including and since June 30, 2005 and on the current year. The preliminary and unaudited estimates of the total amounts of unauthorized transactions identified from fiscal year 2005 to the present are as follows:

| | |
|---|---|
| FY 2005: | $2,195,477 |
| FY 2006: | $2,227,669 |
| FY 2007: | $3,160,310 |
| FY 2008: | $5,040,968 |
| FY 2009: | $8,485,937 |
| Q1 FY 2010: | $5,326,305 |
| Q2 FY 2010: | $4,917,005 |

The company previously reported pre-tax income for fiscal years 2007 and through Q1 2010 (September 30, 2009) as follows:

| | |
|---|---|
| FY 2007: | $8,344,715 |
| FY 2008: | $7,410,569 |
| FY 2009: | $2,887,730 |
| Q1 2010: | $928,491 |

Koss anticipates restating its financial statements, at least, for fiscal years 2008 and 2009, and the first quarter of fiscal year 2010 ending September 30, 2009. The investigation has not yet confirmed the extent to which the unauthorized transactions were charged to the Company's income statements for the applicable periods. To the extent that additional amounts are charged to the income statements to reflect the unauthorized transactions, the Company will apply the effective tax rates for the applicable periods and seek tax refunds for excess amounts previously paid. The Company also expects to recover significant amounts through the recovery and sale of merchandise that was purchased as part of the unauthorized transactions, the recovery of other assets, insurance proceeds, and potential claims against third parties. The Company is informed that at least 22,000 items — including high-end women's clothing, shoes, handbags, and jewelry — have been seized by law enforcement authorities.

68.     Thereafter, on January 11, 2010, NASDAQ resumed trading of Koss shares. The price of Koss's stock declined 24%, on high trading volume, to close at $4.19 per share on January 11, 2010, which was $1.32 below its previous closing price of $5.51 on December 21, 2009, before trading was halted.

Case 2:10-cv-00041-RTR   Filed 01/15/10   Page 20 of 39   Document 1

## KOSS' VIOLATION OF GAAP RULES
## IN ITS FINANCIAL STATEMENTS
## FILED WITH THE SEC

69.     These financial statements and the statements about the Company's financial results were false and misleading, as such financial information was not prepared in conformity with GAAP, nor was the financial information a fair presentation of the Company's operations due to the Company's improper accounting in violation of GAAP rules.

70.     GAAP are those principles recognized by the accounting profession as the conventions, rules and procedures necessary to define accepted accounting practice at a particular time. Regulation S-X (17 C.F.R. § 210.4 01(a) (1)) states that financial statements filed with the SEC which are not prepared in compliance with GAAP are presumed to be misleading and inaccurate. Regulation S-X requires that interim financial statements must also comply with GAAP, with the exception that interim financial statements need not include disclosure which would be duplicative of disclosures accompanying annual financial statements. 17 C.F.R. § 210.10-01(a).

71.     The fact that Koss announced that it plans to restate its financial statements, and informed investors that these financial statements should not be relied upon is an admission that they were false and misleading when originally issued (APB No.20, 7-13; SFAS No. 154, 25).

72.     Given these accounting irregularities, the Company announced financial results that were in violation of GAAP and the following principles:

(a)     The principle that "interim financial reporting should be based upon the same accounting principles and practices used to prepare annual financial statements" was violated (APB No. 28, 10);

(b)     The principle that "financial reporting should provide information that is

21

useful to present to potential investors and creditors and other users in making rational investment, credit, and similar decisions" was violated (FASB Statement of Concepts No. 1, 34);

(c)     The principle that "financial reporting should provide information about the economic resources of an enterprise, the claims to those resources, and effects of transactions, events, and circumstances that change resources and claims to those resources" was violated (FASB Statement of Concepts No. 1, 40);

(d)     The principle that "financial reporting should provide information about an enterprise's financial performance during a period" was violated (FASB Statement of Concepts No. 1, 42);

(e)     The principle that "financial reporting should provide information about how management of an enterprise has discharged its stewardship responsibility to owners (stockholders) for the use of enterprise resources entrusted to it" was violated (FASB Statement of Concepts No. 1, 50);

(f)     The principle that "financial reporting should be reliable in that it represents what it purports to represent" was violated (FASB Statement of Concepts No. 2, 58-59);

(g)     The principle that "completeness, meaning that nothing is left out of the information that may be necessary to insure that it validly represents underlying events and conditions" was violated (FASB Statement of Concepts No. 2, 79); and

(h)     The principle that "conservatism be used as a prudent reaction to uncertainty to try to ensure that uncertainties and risks inherent in business situations are adequately considered" was violated (FASB Statement of Concepts No. 2, 95).

73.     The adverse information concealed by Defendants during the Class Period and

detailed above was in violation of Item 303 of Regulation S-K under the federal securities law (17 C.F.R. §229.303).

## CLASS ACTION ALLEGATIONS

74.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased Koss securities between July 12, 2005 and December 21, 2009, inclusive (the "Class Period") and who were damaged thereby.  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

75.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Koss securities were actively traded on the National Association of Securities Dealers Automated Quotations Market ("NASDAQ").  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Millions of Koss shares were traded publicly during the Class Period on the NASDAQ and as of December 1, 2009, Koss had 7,382,706 shares of common stock outstanding (following a two-for-one stock split effective that day).  Record owners and other members of the Class may be identified from records maintained by Koss or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

76.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of

federal law that is complained of herein.

77.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

78.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     Whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     Whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Koss; and

(c)     To what extent the members of the Class have sustained damages and the proper measure of damages.

79.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

80.     The market for Koss securities was open, well-developed and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures to disclose, Koss securities traded at artificially inflated prices during the Class Period. Plaintiff

and other members of the Class purchased or otherwise acquired Koss securities relying upon the integrity of the market price of the Company's securities and market information relating to Koss, and have been damaged thereby.

81. During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Koss securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. Said statements and omissions were materially false and/or misleading in that they failed to disclose material adverse information and/or misrepresented the truth about Koss' business, operations, and prospects as alleged herein.

82. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Koss' financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## LOSS CAUSATION

83. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

84.     During the Class Period, Plaintiff and the Class purchased Koss securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors's losses.

## SCIENTER ALLEGATIONS

85.     As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Koss, his/her control over, and/or receipt and/or modification of Koss' allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Koss, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

86.     The market for Koss securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, Koss securities traded at artificially inflated prices during the Class Period. On January 19, 2006, the price of the Company's common stock closed at a Class Period high of $29.95 per share (prior to a two-for-one stock split effective December 1, 2009). Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the

26

integrity of the market price of Koss securities and market information relating to Koss, and have been damaged thereby.

87. During the Class Period, the artificial inflation of Koss stock was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Koss' business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Koss and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company stock. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

88. At all relevant times, the market for Koss securities was an efficient market for the following reasons, among others:

(a) Koss stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b) As a regulated issuer, Koss filed periodic public reports with the SEC and the NASDAQ;

(c) Koss regularly communicated with public investors *via* established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services.

27

89.     As a result of the foregoing, the market for Koss securities promptly digested current information regarding Koss from all publicly available sources and reflected such information in Koss' stock price. Under these circumstances, all purchasers of Koss securities during the Class Period suffered similar injury through their purchase of Koss securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

90.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Koss who knew that the statement was false when made.

## FIRST CLAIM
### Violation of Section 10(b) of
### The Exchange Act and Rule 10b-5
### Promulgated Thereunder Against All Defendants

91.     Plaintiff repeats and realleges each and every allegation described above as if fully set forth herein.

92.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Koss securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

93.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Koss securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

94.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Koss' financial well-being and prospects, as specified herein.

95.     These Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a

course of conduct as alleged herein in an effort to assure investors of Koss' value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Koss and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

96.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these Defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these Defendants enjoyed significant personal contact and familiarity with the other Defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these Defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

97.     The Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such

Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Koss' financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

98. As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Koss securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trade, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Koss securities during the Class Period at artificially high prices and were damaged thereby.

99. At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Koss was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Koss securities, or, if they had acquired such securities during the Class Period, they would not have done so at the

artificially inflated prices which they paid.

100.    By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

101.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM
### Violation of Section 20(a) of
### The Exchange Act Against the Individual Defendants

102.    Plaintiff repeats and realleges each and every allegation described above as if fully set forth herein.

103.    The Individual Defendants acted as controlling persons of Koss within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

104.    In particular, each of these Defendants had direct and supervisory involvement in

the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

105. As set forth above, Koss and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and/or omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED: January 15, 2010        **ADEMI & O'REILLY LLP**

By: _____
Guri Ademi (SBN: 1021729)
Shpetim Ademi (SBN: 1026973)
David J. Syrios (SBN: 1045779)
3620 East Layton Ave.
Cudahy, Wisconsin 53110
Telephone: (866) 264-3995
Facsimile: (414) 482-8001
gademi@ademilaw.com
sademi@ademilaw.com


**GLANCY BINKOW & GOLDBERG LLP**
Lionel Z. Glancy
Michael Goldberg
1801 Avenue of the Stars, Suite 311
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem, PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867

*Attorneys for Plaintiff David A. Puskala*

## SWORN CERTIFICATION OF PLAINTIFF

Koss Corporation, SECURITIES LITIGATION

I, David A. Puskala, certify that:

1. I have reviewed the complaint and authorized its filing.

2. I did not purchase Koss Corporation, the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in Koss Corporation during the class period set forth in the Complaint are as follows:

| | | |
|---|---|---|
| I bought _____ shares on ___/___/___ at $____ per share. | |
| I bought _____ shares on ___/___/___ at $____ per share. | *Please see* |
| I bought _____ shares on ___/___/___ at $____ per share. | |
| I bought _____ shares on ___/___/___ at $____ per share. | *accompanying* |
| I bought _____ shares on ___/___/___ at $____ per share. | |
| I sold _____ shares on ___/___/___ at $____ per share. | *account transaction* |
| I sold _____ shares on ___/___/___ at $____ per share. | *history pages.* |
| I sold _____ shares on ___/___/___ at $____ per share. | |
| I sold _____ shares on ___/___/___ at $____ per share. | |
| I sold _____ shares on ___/___/___ at $____ per share. | |

(List Additional Transactions on a Separate Page if Necessary)

5. I have not served as a representative party on behalf of a class under this title during the last three years except as stated:

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

____ ☐ Check here if you are a current employee or former employee of the defendant Company.

I declare under penalty of perjury that the foregoing are true and correct statements.

Dated: _Jan 11, 2010_

_____
(Please Sign Your Name Above)

## AMERITRADE
Apex

**Account History**  Search results for 1/1/2005 to 12/31/2005

Mon Jan 11 2010 3:35:10 PM EST

| Date 09/08/2005 11:49:21 | Description Bought 175 KOSS @ 17 | Net Change -2,987.99 | Net Cash Balance --- |
|---|---|---|---|

| | | | |
|---|---|---|---|
| **Transaction ID:** 2006164736 | | **Order Number:** 1683890434 | |
| **Underlying:** | | **Strike:** | |
| **Put/Call:** | | **Expiration:** | |
| **Session:** Regular Market Hours | | **Routing:** | |
| **Date Entered:** 09/07/2005 | | **Time Entered:** 11:02:21 | |
| **Commission:** 10.99 | | **Sales Fee:** | |

| Date 10/14/2005 10:01:20 | Description QUALIFIED DIVIDEND (KOSS) | Net Change 22.75 | Net Cash Balance --- |
|---|---|---|---|

| | |
|---|---|
| **Transaction ID:** 2040729726 | **Symbol:** KOSS |
| **Quantity:** | **Underlying:** |
| **Put/Call:** | **Strike:** |
| **Expiration:** | |

Case 2:10-cv-00041-RTR   Filed 01/15/10   Page 36 of 39   Document 1

# ⚡ AMERITRADE
Apex

**Account History**  Search results for 1/1/2007 to 12/31/2007                      Mon Jan 11 2010 3:37:49 PM EST

| Date | Description | Net Change | Net Cash Balance |
|---|---|---|---|
| 07/16/2007 12:46:25 | Bought 1.191 KOSS @ 19.1 | -22.75 | --- |

| Transaction ID: 2977054095 | | Order Number: | |
|---|---|---|---|
| Underlying: | | Strike: | |
| Put/Call: | | Expiration: | |
| Session: | | Routing: | |
| Date Entered: | | Time Entered: | |
| Commission: | | Sales Fee: | |

| Date | Description | Net Change | Net Cash Balance |
|---|---|---|---|
| 10/12/2007 13:24:02 | Bought 340 KOSS @ 19 | -6,469.99 | --- |

| Transaction ID: 3216475381 | | Order Number: | 3257944787 |
|---|---|---|---|
| Underlying: | | Strike: | |
| Put/Call: | | Expiration: | |
| Session: | Seamless session | Routing: | |
| Date Entered: | 10/08/2007 | Time Entered: | 12:54:04 |
| Commission: | 9.99 | Sales Fee: | |

| Date | Description | Net Change | Net Cash Balance |
|---|---|---|---|
| 10/16/2007 13:13:12 | Bought 1.148 KOSS @ 19.95 | -22.90 | --- |

| Transaction ID: 3223447113 | | Order Number: | |
|---|---|---|---|
| Underlying: | | Strike: | |
| Put/Call: | | Expiration: | |
| Session: | | Routing: | |
| Date Entered: | | Time Entered: | |
| Commission: | | Sales Fee: | |

| Date | Description | Net Change | Net Cash Balance |
|---|---|---|---|
| 12/18/2007 18:53:19 | Bought 28.709 KOSS @ 18.0199 | -517.34 | --- |

| Transaction ID: 3438889091 | | Order Number: | |
|---|---|---|---|
| Underlying: | | Strike: | |
| Put/Call: | | Expiration: | |
| Session: | | Routing: | |
| Date Entered: | | Time Entered: | |
| Commission: | | Sales Fee: | |

Case 2:10-cv-00041-RTR   Filed 01/15/10   Page 37 of 39   Document 1          1/11/2010 3:38 PM

**AMERITRADE**
Apex

**Account History**   Search results for 1/1/2008 to 12/31/2008                            Mon Jan 11 2010 3:39:18 PM EST

| Date | Description | | Net Change | Net Cash Balance |
|---|---|---|---|---|
| 01/16/2008 17:37:17 | Bought 4.029 KOSS @ 17.62 | | -70.99 | --- |

| **Transaction ID:** 3559489606 | | **Order Number:** | |
| **Underlying:** | | **Strike:** | |
| **Put/Call:** | | **Expiration:** | |
| **Session:** | | **Routing:** | |
| **Date Entered:** | | **Time Entered:** | |
| **Commission:** | | **Sales Fee:** | |

| Date | Description | | Net Change | Net Cash Balance |
|---|---|---|---|---|
| 04/04/2008 16:34:25 | Bought 60 KOSS @ 16.5 | | -990.00 | --- |

| **Transaction ID:** 3797505024 | | **Order Number:** 3769340342 | |
| **Underlying:** | | **Strike:** | |
| **Put/Call:** | | **Expiration:** | |
| **Session:** | Seamless session | **Routing:** | |
| **Date Entered:** | 04/04/2008 | **Time Entered:** 13:39:06 | |
| **Commission:** | | **Sales Fee:** | |

| Date | Description | | Net Change | Net Cash Balance |
|---|---|---|---|---|
| 04/16/2008 16:47:29 | Bought 3.997 KOSS @ 17.8889 | | -71.51 | --- |

| **Transaction ID:** 3821597543 | | **Order Number:** | |
| **Underlying:** | | **Strike:** | |
| **Put/Call:** | | **Expiration:** | |
| **Session:** | | **Routing:** | |
| **Date Entered:** | | **Time Entered:** | |
| **Commission:** | | **Sales Fee:** | |

| Date | Description | | Net Change | Net Cash Balance |
|---|---|---|---|---|
| 07/16/2008 15:23:13 | Bought 4.204 KOSS @ 18.9889 | | -79.83 | --- |

| **Transaction ID:** 4053789664 | | **Order Number:** | |
| **Underlying:** | | **Strike:** | |
| **Put/Call:** | | **Expiration:** | |
| **Session:** | | **Routing:** | |
| **Date Entered:** | | **Time Entered:** | |
| **Commission:** | | **Sales Fee:** | |

| Date | Description | | Net Change | Net Cash Balance |
|---|---|---|---|---|
| 10/16/2008 15:18:30 | Bought 5.359 KOSS @ 15 | | -80.38 | --- |

| **Transaction ID:** 4309366149 | | **Order Number:** | |
| **Underlying:** | | **Strike:** | |
| **Put/Call:** | | **Expiration:** | |
| **Session:** | | **Routing:** | |
| **Date Entered:** | | **Time Entered:** | |
| **Commission:** | | **Sales Fee:** | |

Case 2:10-cv-00041-RTR   Filed 01/15/10   Page 38 of 39   Document 1

**TD AMERITRADE**
Apex

**Account History**  Search results for 1/1/2009 to 12/31/2009                          Mon Jan 11 2010 3:41:16 PM EST

| Date | Description | Net Change | Net Cash Balance |
|---|---|---|---|
| 01/16/2009  12:44:37 | Bought 7.438 KOSS @ 10.8992 | -81.07 | --- |

**Transaction ID:** 4590864897
**Underlying:**
**Put/Call:**
**Session:**
**Date Entered:**
**Commission:**

**Order Number:**
**Strike:**
**Expiration:**
**Routing:**
**Time Entered:**
**Sales Fee:**

| Date | Description | Net Change | Net Cash Balance |
|---|---|---|---|
| 04/16/2009  14:02:09 | Bought 5.451 KOSS @ 15.0492 | -82.04 | --- |

**Transaction ID:** 4858939132
**Underlying:**
**Put/Call:**
**Session:**
**Date Entered:**
**Commission:**

**Order Number:**
**Strike:**
**Expiration:**
**Routing:**
**Time Entered:**
**Sales Fee:**

| Date | Description | Net Change | Net Cash Balance |
|---|---|---|---|
| 07/16/2009  12:34:45 | Bought 6.041 KOSS @ 13.6992 | -82.75 | --- |

**Transaction ID:** 5119863428
**Underlying:**
**Put/Call:**
**Session:**
**Date Entered:**
**Commission:**

**Order Number:**
**Strike:**
**Expiration:**
**Routing:**
**Time Entered:**
**Sales Fee:**

| Date | Description | Net Change | Net Cash Balance |
|---|---|---|---|
| 10/16/2009  14:20:45 | Bought 6.998 KOSS @ 11.936 | -83.53 | --- |

**Transaction ID:** 5383488877
**Underlying:**
**Put/Call:**
**Session:**
**Date Entered:**
**Commission:**

**Order Number:**
**Strike:**
**Expiration:**
**Routing:**
**Time Entered:**
**Sales Fee:**

Case 2:10-cv-00041-RTR   Filed 01/15/10   Page 39 of 39   Document 1