# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**DAVID A. PUSKALA, individually and on
behalf of all others similarly situated,**
                    **Plaintiff,**

      **v.**                                             **Case No. 10-C-0041**

**KOSS CORPORATION, MICHAEL J. KOSS,
SUJATA ("Sue") SACHDEVA, and GRANT
THORNTON, LLP**
                    **Defendants.**

---

## DECISION AND ORDER

This is a proposed class action alleging securities fraud in violation of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. § 240.10b-5.   Plaintiff also brings claims asserting "control person" liability under § 20(a) of the Act, 15 U.S.C. § 78t(a).   The suit arises out of the embezzlement of over $30 million from the Koss Corporation by Sujata "Sue" Sachdeva, the company's vice president of finance, secretary and principal accounting officer.   Plaintiff names Sachdeva as a defendant, but he also names the company, its CEO, and its former accounting firm as defendants.   The latter three defendants have moved to dismiss the amended class action complaint for failure to state a claim for relief against them.   Fed R. Civ. P. 12(b)(6).

## I.  BACKGROUND

The facts stated in this opinion are taken from the amended class action complaint, which incorporates by reference Sachdeva's plea agreement, the SEC's civil complaint against her, and Koss Corporation's civil complaint against Sachdeva and Koss's former

accounting firm, Grant Thornton LLP. I assume for purposes of the present motions that the facts stated in the complaint, and in the documents incorporated by reference into the complaint, are true. <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007).

Between 2004 and December 2009, Sachdeva embezzled more than $30 million from Koss and used the stolen funds to purchase luxury goods, including designer clothing, jewelry, furs and household items. Sachdeva stole money from the company through use of cashier's checks, wire transfers and traveler's checks. In an effort to conceal the missing funds, Sachdeva devised an elaborate scheme of accounting fraud. With the assistance of Koss's senior accountant, Sachdeva made false accounting entries in the company's books that were designed to hide the cash she had embezzled. The various techniques Sachdeva employed are detailed in the SEC complaint attached to plaintiff's complaint, but in general the scheme involved making adjustments to various company accounts to offset the diverted cash. For example, in one series of false entries, Sachdeva reduced a company cash account by $750,000, an amount Sachdeva had stolen. To ensure that the accounts balanced and that no one noticed the missing cash, Sachdeva made corresponding accounting entries that increased inventory by $500,000, decreased liabilities by $50,000, and decreased sales by $200,000. These entries made it appear as though Koss had devoted $750,000 to legitimate business transactions. Sachdeva made countless other such entries in an effort to avoid detection. However, to prevent the company's outside accountants from noticing what she was doing, Sachdeva refrained from making fraudulent transfers from certain company accounts during the month of June, when Grant Thornton was conducting its audit.

Sachdeva's fraud was uncovered on December 18, 2009, when American Express notified Koss that funds were being wired from a company bank account to pay for expenses on Sachdeva's personal credit card. On December 21, 2009, Koss asked NASDAQ to halt trading of its stock pending investigation of the unauthorized transactions. That same day, Sachdeva was arrested after admitting to the theft and the accounting fraud. She would eventually plead guilty in federal court to six counts of wire fraud and be sentenced to eleven years' imprisonment. When Koss's stock resumed trading on January 11, 2010, the share price declined by approximately 24%.

The false accounting entries that Sachdeva made to conceal her theft were used to prepare Koss's financial statements. This, in turn, rendered all of the SEC filings – the 10-Ks and 10-Qs – issued by Koss during the period in which the fraud was ongoing materially false. Ultimately, Koss filed amended and restated financial statements for fiscal years 2008, 2009 and 2010. Both Sachdeva and the company's CEO, Michael J. Koss, signed the false SEC reports and attested to the accuracy of the false financial statements. The company's outside auditors, Grant Thornton LLP, certified that the false financial statements fairly presented Koss's financial position.

Plaintiff seeks to represent a class of investors in Koss's stock who suffered economic losses as a result of purchasing Koss stock in reliance on the false information contained in the company's SEC filings. Plaintiff sues Sachdeva under § 10(b) and Rule 10b-5 and as a control person under § 20(a). Sachdeva has not moved to dismiss the complaint. However, plaintiff also sues the company itself, Michael J. Koss, and Grant Thornton LLP. Plaintiff does not contend that any of these defendants knew about Sachdeva's embezzlement or the accounting fraud she used to cover it up. However,

plaintiff contends that the company is vicariously liable for Sachdeva's fraud, that Michael Koss committed securities fraud by recklessly certifying that the company's financial statements were accurate, and that Grant Thornton committed securities fraud by recklessly representing that Koss's financial statements fairly presented Koss's financial position. Plaintiff also argues that Michael Koss is liable as a control person. The company, Koss and Grant Thornton move to dismiss these claims.

## II. DISCUSSION

As noted, plaintiff brings claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934. Section 10(b) forbids the use or employment of any deceptive device in connection with the purchase or sale of any security. 15 U.S.C. § 78j(b). Rule 10b-5 implements this provision by forbidding the making of any "untrue statement of a material fact" or the omission of any material fact needed to make a statement not misleading. 17 C.F.R. § 240.10b-5. The Supreme Court has determined that § 10(b) and Rule 10b-5 imply a private cause of action for securities fraud. E.g., Matrixx Initiatives, Inc. v. Siracusano, __ U.S. __, 131 S. Ct. 1309, 1317 (2011). In a typical § 10(b) private action, a plaintiff must prove "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." Id. at 1317-18 (quoting Stoneridge Inv. Partners, LLC v. Scientific–Atlanta, Inc., 552 U.S. 148, 157 (2008)).

Section 20(a) creates a form of secondary liability for violations of the securities laws. It provides that any person who "controls, directly or indirectly, any person liable"

under the securities laws is jointly and severally liable with the controlled person for the primary violation. 15 U.S.C. § 78t(a). To prevail on a § 20(a) claim, a plaintiff must first demonstrate that the controlled person committed a primary violation, Pugh v. Tribune Co., 521 F.3d 686, 693 (7th Cir. 2008), which in the present case means a violation of § 10(b) and Rule 10b-5.

In the securities context, to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must satisfy the heightened pleading requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(b)(1)-(2). The only heightened pleading requirement at issue in the present case is the requirement that the plaintiff state with particularity "facts giving rise to a strong inference that the defendant acted with the required state of mind." Id. § 78u-4(b)(2)(A). Here, that means pleading a strong inference of the defendant's "scienter" in connection with the § 10(b) and Rule 10b-5 claims. Scienter is the intent to deceive, manipulate or defraud, Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 (1976), and to prove a defendant's scienter a plaintiff must prove that he either knew the statement was false or was reckless in disregarding a substantial risk that it was false, Makor Issues & Rights, Ltd v. Tallabs Inc., 513 F.3d 702, 704 (7th Cir. 2008) ("Tellabs II").

The defendants' motions to dismiss raise four issues: (1) Is the company liable for Sachdeva's § 10(b) and Rule 10b-5 violations? (2) Does the amended complaint adequately plead Michael Koss's scienter? (3) Does the amended complaint adequately plead Grant Thornton LLP's scienter? And (4) does the amended complaint state a § 20(a) claim for control-person liability against Michael Koss?

**A. Liability of Koss Corporation**

A corporation or other business entity acts only through its agents, and so a corporation's liability for securities fraud is determined by principles of agency law. In the securities context, two agency-law concepts are relevant: respondeat superior and apparent authority. Tellabs II, 513 F.3d at 707-08; In re Atlantic Financial Mgmt., Inc., 784 F.2d 29, 31-32 (1st Cir. 1986); William H. Kuehnle, Secondary Liability Under the Federal Securities Laws – Aiding and Abetting, Conspiracy, Controlling Person, and Agency: Common Law Principles and the Statutory Scheme, 14 J. Corp. L. 313, 367-70 (1988).[1] Under respondeat superior, a "master" (employer) is liable for the torts of a "servant" (employee) done while the servant is acting within the scope of employment. Kuehnle, supra, at 368. However, when the servant does not act for the purpose of furthering his master's goals but is on a "frolic of his own," the master is not liable. Tellabs II, 513 F.3d at 708; Atlantic Financial, 784 F.2d at 32. Under the concept of apparent authority, a principal is liable when an agent acting with apparent authority makes a statement on which another relies. Kuehnle, supra, at 369. The agent has apparent authority when, from the perspective of third parties, it appears that the corporation has vested the agent with authority to make the statement, whether or not the corporation actually has done so. Unlike respondeat-superior liability, a principal may be held liable for acts done by an agent with apparent authority even if the agent acts entirely for his own purposes and not for the purpose of serving the principal. Am. Soc'y of Mech. Eng'rs, Inc. v. Hydrolevel Corp., 456

---

[1] A third concept – actual authority – could theoretically apply in the securities context, but it rarely does in practice. See Atlantic Financial, 784 F.2d at 31.

U.S. 556, 566 (1982) ("ASME"); Atlantic Financial, 784 F.2d at 32; Wise v. Wachovia Secs., LLC, 450 F.3d 265, 269 (7th Cir. 2006).

In the present case, Koss argues that it cannot be held liable for Sachdeva's securities fraud because Sachdeva committed the fraud to conceal her acts of embezzlement, rather than to further the company's goals. It is true that Sachdeva was committing fraud against the company rather than on behalf of it, and that therefore her fraud cannot be imputed to the company under respondeat superior. Tellabs II, 513 F.3d at 708; Cenco Inc. v. Seidman & Seidman, 686 F.2d 449, 456 (7th Cir. 1982). But this does not mean that Sachdeva's fraud cannot be imputed to the company under principles of apparent authority. Rather, as we have just seen, if an agent acts with apparent authority a principal is liable for the agent's fraud even though the agent acts solely to benefit himself. ASME, 456 U.S. at 566. And in this case Sachdeva unquestionably acted with apparent authority when she signed the company's 10-Ks and 10-Qs, thereby representing that the information they contained was accurate.[2]

_____

[2]Koss relies heavily on Tellabs II for the proposition that it cannot be held liable for Sachdeva's fraud if Sachdeva was acting in furtherance of her own goals rather than the company's. This is because Tellabs II states that "deliberate wrongs by an employee are not imputed to his employer unless they are not only within the scope of his employment but in attempted furtherance of the employer's goals." 513 F.3d at 708. However, in making this statement, the court was discussing liability based on respondeat superior rather than apparent authority. The court's example involved a "low-level employee" who, in concealing his embezzlement, reported false information to his superiors, which caused the superiors to unwittingly misrepresent the corporation's assets to investors. The low-level employee would not have made any statements directly to investors, and so liability could not have been based on the low-level employee's apparent authority. The superiors did not know they were reporting false information, and so they did not have scienter and their apparent authority could not lead to liability. Liability would result if the low-level employee's scienter could be imputed to the corporation through respondeat superior, thereby rendering the statements made by the superiors fraudulent. But this could happen only if the employee had been acting in furtherance of the employer's goals. In the present

Koss does not dispute that Sachdeva's statements were made with apparent authority. Instead, it argues that apparent authority cannot be used to impute liability for securities fraud to a company. This argument is clearly wrong, as it is very nearly black-letter securities law that "[a] corporation is liable for statements by employees who have apparent authority to make them." Tellabs II, 513 F.3d at 708; accord Pugh v. Tribune Co., 521 F.3d 686, 697 (7th Cir. 2008); Institutional Investors Group v. Avaya, Inc., 564 F.3d 242, 251-52 (3d Cir. 2009); Atlantic Financial, 784 F.2d at 32, 35; Kerbs v. Fall River Indus., Inc., 502 F.2d 731, 741 (10th Cir. 1974), abrogated on other grounds by Central Bank of Denver v. First Interstate Bank, 511 U.S. 164 (1994).[3] Koss tries to get around this principle by claiming that "apparent authority cannot be used to impute the element of scienter." (Reply Br. [Docket #47] at 3.) It is not clear whether Koss means to distinguish between imputing liability for fraud to a principal and imputing scienter to a principal, but in any case courts have explicitly held that "[t]he scienter of the senior controlling officers of a corporation may be attributed to the corporation itself to establish liability as a primary violator of § 10(b) and Rule 10b-5 when those senior officials were acting within the scope of their apparent authority." Adams v. Kinder-Morgan, Inc., 340 F.3d 1083, 1106-07 (10th

case, Sachdeva had both apparent authority and scienter, and so Koss is liable even though Sachdeva was not acting in furtherance of Koss's goals.

[3]Some courts have found that control-person liability under § 20(a) of the Securities Exchange Act of 1934 supercedes liability based on apparent authority and other common-law forms of liability in the securities context. See Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1576-77 (1990) (en banc) (collecting cases). However, Koss does not argue that § 20(a) displaces agency principles, and in any event the Seventh Circuit rejected that argument long ago. See Fey v. Walston & Co., 493 F.2d 1036, 1051-53 (7th Cir. 1974); see also Atlantic Financial, 784 F.2d at 30 (describing Fey as a case in which the Seventh Circuit "held that section 20(a) does not constitute an exclusive substitute for vicarious liability that might otherwise exist").

Cir. 2003) (collecting cases and other authority supporting the quotation). Here, Sachdeva was a senior corporate officer who made statements to the market while acting with apparent authority, and therefore the company is liable for her fraud even though she was not trying to further the company's goals. Accordingly, the company's motion to dismiss will be denied.

**B.      Liability of Michael J. Koss and Grant Thornton LLP under Section 10(b) and Rule 10b-5**

Both Michael J. Koss and Grant Thornton LLP move to dismiss the § 10(b) and Rule 10b-5 claims against them on the ground that plaintiff has failed to plead facts giving rise to a strong inference of scienter, as required by the PSLRA, 15 U.S.C. § 78u-4(b)(2)(A). Plaintiff concedes that neither Michael Koss nor Grant Thornton was aware of Sachdeva's theft and accounting fraud; however, he contends that they were both recklessly indifferent to the truth of the statements they made about the accuracy of Koss's financial statements. Plaintiff's theory against Michael Koss is that he acted recklessly when he signed Koss's 10-Ks and 10-Qs; his theory against Grant Thornton is that it acted recklessly when it certified that Koss's financial statements fairly presented Koss's financial position.

The Supreme Court has not yet decided whether recklessness satisfies the scienter element in an action under Rule 10b-5. See Matrixx Initiatives, __ U.S. at __, 131 S. Ct. at 1323. However, the Seventh Circuit has held that it does. Sundstrand Corp. v. Sun Chem. Corp., 553 F.2d 1033, 1044-45 (7th Cir. 1977). Although there are various formulations of the recklessness standard in the securities context, it is typically described as involving "an extreme departure from the standards of ordinary care . . . to the extent that the danger [of the statement's misleading another] was either known to the defendant

or so obvious that the defendant must have been aware of it." Tellabs II, 513 F.3d at 704. Thus, the defendant is liable if he is actually aware of a danger of misleading but consciously disregards it. However, because it is hard to prove that someone is actually aware of a particular danger, a person is also liable if it can be shown that the danger was so obvious that a reasonable person would have known about it. Tellabs II, 513 F.3d at 704 ("When the facts known to a person place him on notice of a risk, he cannot ignore the facts and plead ignorance of the risk."); AMPAT/Midwest, Inc. v. Ill. Tool Works, Inc., 896 F.2d 1035, 1042 (7th Cir. 1990) (a person cannot close his eyes to a risk that is obvious even if he does not himself perceive that risk); Sundstrand Corp., 553 F.2d at 1045 (a person is reckless when he disregards a danger of misleading that is "so obvious that any reasonable man would be legally bound as knowing"). In this situation, the obviousness of the risk is circumstantial evidence of the person's awareness of it. See Tellabs II, 513 F.3d at 704 ("knowledge [of a risk] is inferable from gravity"); 1 Dan B. Dobbs, The Law of Torts § 27, at p. 51 (Practitioner Treatise 2001) ("[i]f the risk is obvious enough, the trier can infer that the defendant was in fact conscious of it, and if it is also a serious risk of substantial harm, the trier of fact can find recklessness"). Accordingly, the recklessness standard is satisfied when a person makes a statement under circumstances in which a reasonable person having knowledge of the facts known to the defendant would realize that his statement poses a substantial risk of misleading another.

Because this is a motion to dismiss under the PSLRA, at this stage of the proceedings plaintiff's burden is to plead with particularity facts giving rise to a strong inference that Michael Koss and Grant Thornton LLP were recklessly indifferent to a substantial risk of misleading investors. To satisfy this burden, plaintiff must plead enough

10

concrete facts to make an inference of recklessness "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." <u>Tellabs</u>, 551 U.S. at 324. To determine whether the inference of recklessness is "cogent and at least as compelling as any opposing inference," I compare the strength of the inference of recklessness to the strength of any innocent explanation for the statement's falsity. Unless the inference of recklessness is at least as compelling as any innocent explanation, the motion to dismiss must be granted. With these standards in mind, I turn to the specific allegations against Michael Koss and Grant Thornton LLP.

**1. Michael J. Koss**

Like Sachdeva, Michael J. Koss signed the company's SEC reports and attested to the accuracy of Koss's financial statements. To adequately plead that Michael Koss was reckless in doing these things, plaintiff's burden is to point to facts known to Koss at the time he signed the company's financial statements giving rise to a substantial risk that such statements were false. Plaintiff seeks to satisfy this burden by showing that Michael Koss was aware of facts indicating that the company's internal controls over its financial-reporting practices were completely unreliable, such that no top executive at Koss could have thought that the financial statements being produced by the company were reasonably accurate.

Turning to the complaint to see whether this inference is cogent and at least as compelling as innocent explanations, the first thing to notice is that the complaint pleads no concrete facts about the actual condition of the company's internal controls over financial reporting during the period in which Sachdeva's fraud was ongoing. The complaint identifies no specific deficiencies in the internal controls, and it does not identify

any particular anti-fraud measure that could have been taken but wasn't.[4]  Instead, the complaint rests on plaintiff's assertion that because Sachdeva was able to embezzle more than $30 million without detection over a period of four years, the controls must have been seriously deficient and Michael Koss must have known that they were.  This type of argument was rejected by the Seventh Circuit in Pugh v. Tribune Co., 521 F.3d 686, 694-95 (7th Cir. 2008) and Higginbotham v. Baxter International Inc., 495 F.3d 753, 759-60 (7th Cir. 2007), and plaintiff does not even cite these cases in his brief, much less attempt to distinguish them.[5]

What plaintiff in the present case is attempting to do – and what the plaintiffs in Pugh and Higginbotham were attempting to do – is invoke a distorted form of res ipsa

---

[4]Plaintiff does list eight ways in which Koss's internal controls were circumvented and seems to hold this list out as a list of specific deficiencies.  (Br. in Opp. [Docket # 40] at 21.)  But a list of ways in which controls were circumvented is not a list of deficiencies in those controls.  Controls need not be bulletproof, and so the fact that a control was circumvented does not mean it was deficient.  Higginbotham v. Baxter Int'l Inc., 495 F.3d 753, 759-60 (7th Cir. 2007).  In any event, plaintiff's list is so vague that it doesn't even hint at any specific deficiency.  For example, plaintiff states that internal controls were circumvented in relation to "wire transfers and cashier's checks" but does not identify any internal controls that were or should have been in place to protect against a misuse of wire transfers or cashier's checks.

[5]Plaintiff does cite cases from various courts standing for the proposition that the size of a fraud can be used to draw an inference of scienter, but those cases do not involve situations in which a corporate insider commits accounting fraud in order to conceal her embezzlement.  In the cases plaintiff cites, the accounting fraud was of the Enron variety, in which the company employs fraudulent accounting practices in order to make the company look more attractive to investors.  When sued for fraud, the top managers plead ignorance of the fraudulent accounting practices, but when the fraud is large, it is likely that the managers knew what was going on, since the managers are likely to have known that the company's actual condition was substantially different than the condition indicated by the financial statements.  In contrast, when a corporate insider takes steps to conceal her own theft and fraudulent accounting practices from the company, including its top managers, the same inference concerning the managers' knowledge cannot be drawn.

loquitur. In its ordinary form, res ipsa loquitur allows a plaintiff in a negligence case to prevail by showing that, even if there is no direct evidence of the defendant's negligence, the circumstances of the accident indicate that it probably would not have occurred had the defendant not been negligent. Clifford v. Crop Prod. Servs., Inc., 627 F.3d 268, 273 (7th Cir. 2010); Aguirre v. Turner Constr. Co., 582 F.3d 808, 810-11 (7th Cir. 2009). To be able to use this doctrine, it must be obvious that an accident of the type that injured the plaintiff rarely occurs in the absence of negligence. Clifford, 627 F.3d at 273; Smoot v. Mazda Motors of Am., Inc., 469 F.3d 675, 679-80 (7th Cir.2006). A typical example is where, after surgery, a plaintiff discovers that a surgeon's sponge was left in his abdomen. Smoot, 469 F.3d at 680. In such a case, an ordinary person can reasonably infer without considering additional evidence that someone in the operating room was negligent. In the securities context, a plaintiff trying to use what I have called a distorted form of res ipsa loquitur is essentially contending that it is obvious that a fraud such as the one that occurred rarely happens in the absence of recklessness by the company's managers (or an intent to deceive), and that therefore no evidence of specific deficiencies in the company's practices needs to be identified.

In the present case, however, it is not at all obvious that a fraud such as Sachdeva's is unlikely to occur unless the company's internal controls are so deficient that its managers could not have had any belief in the accuracy of the company's financial statements. As the Seventh Circuit has recognized, "no system [of financial controls] is so foolproof that it cannot be evaded. Top managers at any firm can affect how financial results are reported." Higginbotham, 495 F.3d at 760. Even if it were possible to construct a foolproof system, the cost of the system might outweigh its benefits. "Spending $50

million to stop a $33 million fraud is no bargain." Id. In this regard, plaintiff has not pleaded any specific facts that tend to rule out the inference that Koss's internal controls were reasonably effective – in the sense that the cost of the controls did not outweigh their expected benefits – but Sachdeva was able to use her position in the company to circumvent them.[6]

Perhaps the size and duration of Sachdeva's fraud gives rise to an inference that Michael Koss was negligent in failing to supervise the company's accounting practices. But negligence is not recklessness. As explained, Koss could have been reckless only if he attested to the accuracy of the company's financial statements while he was in possession of information giving rise to a substantial risk that the statements contained misleading information. This means that he must have known that the company's internal controls were completely unreliable, not just that he was negligent in failing to ensure that effective controls were in place. Even if the occurrence of the fraud could be used to infer that the controls were subpar, it does not give rise to an inference that the controls were completely unreliable and that Michael Koss knew it.[7]

---

[6]Plaintiff does allege that "[a]n individual who has taken a basic online accounting course would have detected Sachdeva's embezzlement" (Am. Class Action Compl. ¶ 36), but this is hyperbole rather than a concrete allegation capable of satisfying the PSLRA's pleading requirements, and so I disregard it.

[7]Plaintiff points to Koss's signature on the certifications required by the Sarbanes-Oxley Act of 2002 as evidence of scienter. In signing these certifications, Koss represented, among other things, that to the best of his knowledge the company had disclosed all substantial weaknesses in its internal controls over financial reporting. Although Koss's certifications strengthen the inference that he would have been aware that the company's internal controls were completely unreliable, they do not strengthen the inference that the controls were completely unreliable in the first place.

Thus, we have at least two innocent explanations that the complaint has failed to rule out or make less compelling than the inference of recklessness: (1) that the company's internal controls were reasonably effective but Sachdeva was able to use her position in the company to circumvent them, and (2) the controls were ineffective, but not so obviously unreliable that a reasonable person could not believe in the truth of financial statements produced by such controls. As explained, however, the issue under review is whether the inference of recklessness is <u>at least</u> as compelling as opposing inferences, and so the remaining question is whether either of the innocent explanations is more compelling than the inference of recklessness. If not, then the claim against Michael Koss cannot be dismissed.

I conclude that the innocent explanations are more compelling than the inference of recklessness. This is because plaintiff has failed to offer any plausible explanation for Michael Koss's recklessness. Unlike simple negligence, recklessness involves consciously disregarding an obvious risk of harm, and thus an inference of recklessness is less compelling when there is no plausible explanation for a person's reckless behavior. In the present case, a plausible explanation might be that Koss had learned about Sachdeva's fraud and wanted to keep it under wraps in the hopes of straightening out the mess she created before investors learned what had happened, but plaintiff closed the door on this theory by pleading that Michael Koss did not learn about Sachdeva's fraud until the market did. (Am. Class Action Compl. ¶ 80.) Plaintiff has suggested no other motive for Koss to have behaved recklessly.

In contrast, the innocent explanations are much more plausible. As discussed, it is relatively easy for a top manager to affect how financial results are reported, and thus

the inference that Koss's internal controls were adequate but Sachdeva was able to use her position in the company to circumvent them is cogent. Likewise, negligence does not require conscious disregard of a risk, and so the inference that Koss's internal controls were inadequate but Michael Koss was simply careless in failing to realize that they were does not require much of an explanation to be cogent. It is easy enough to say that Michael Koss was inattentive or that the deficiencies in the controls may have been difficult to detect, even though they could have been detected had Koss exercised ordinary care. Thus, taking the lack of an explanation for recklessness into account, the innocent inferences must be deemed to be more compelling than the inference of scienter.

In reaching this conclusion, I am aware that courts have said that the absence of allegations establishing a motive to commit securities fraud is not necessarily fatal to a § 10(b) claim. See Tellabs, 551 U.S. at 325. Here, however, the absence of allegations establishing motive are fatal because plaintiff has pleaded no other facts supporting an inference of recklessness. Had plaintiff, for example, specifically identified dozens of obvious and serious flaws in Koss's internal controls, then the lack of allegations establishing motive might not have required dismissal. But plaintiff alleges nothing other than the occurrence of the fraud itself, and to the extent the fraud's occurrence can even be said to give rise to an inference of recklessness in the first place, that inference evaporates once we consider the lack of an explanation for Michael Koss's alleged reckless behavior. Accordingly, the § 10(b) and Rule 10b-5 claim against Michael Koss must be dismissed.

## 2. Grant Thornton LLP

The false statements at issue in plaintiff's claim against Grant Thornton LLP are the firm's annual certifications that Koss's financial statements fairly presented the company's financial position. Also at issue are Grant Thornton's statements that its audits were performed in accordance with standards published by the Public Company Accounting Oversight Board. These two sets of statements are closely related, and in the discussion that follows I treat them collectively as a single representation that Grant Thornton had performed a professional audit of Koss's financial affairs and reached the conclusion that Koss's financial statements were accurate.

Like Michael Koss, Grant Thornton did not know about Sachdeva's embezzlement or accounting fraud, and thus plaintiff does not contend that Grant Thornton knew that the financial statements did not fairly present Koss's financial position. Rather, plaintiff contends that Grant Thornton was reckless in disregarding a substantial risk that Koss's financial statements contained material misstatements caused by employee fraud. Grant Thornton moves to dismiss on the ground that plaintiff has failed to plead facts giving rise to a strong inference of its recklessness.[8]

_____

[8]Before proceeding to an analysis of plaintiff's allegations of recklessness, I note that plaintiff has not identified any individual agent of Grant Thornton who behaved recklessly. As discussed above in connection with the liability of Koss Corporation, corporate scienter is usually imputed to an entity through the acts of its agents. Thus, because plaintiff has not pleaded that any of Grant Thornton's agents were reckless, it is arguable that plaintiff has failed to plead that Grant Thornton itself was reckless. However, Grant Thornton has not moved to dismiss on this ground, choosing instead to argue that plaintiff's allegations fail to give rise to an inference of recklessness at all. I therefore assume that when plaintiff speaks of the recklessness of Grant Thornton, he is referring to some partner at Grant Thornton who was responsible for the audit of Koss's financial affairs. Cf. Tellabs II, 513 F.3d at 710 (noting that "it is possible to draw a strong inference of corporate scienter without being able to name the individuals who concocted and

17

To show that Grant Thornton's certifications of Koss's financial statements were reckless, plaintiff must show that at the time of the certifications Grant Thornton was in possession of facts that would have caused a reasonable person in its position to recognize a substantial risk that the financial statements did not fairly present Koss's financial position. To satisfy this burden, plaintiff once again relies heavily on the inferences that can be drawn from the mere occurrence of Sachdeva's fraud. As I have already explained, however, the mere occurrence of the fraud does not imply that the failure to prevent or detect it was the result of recklessness. Pugh, 521 F.3d at 694-95; Higginbotham, 495 F.3d at 759-60. The occurrence of the fraud is also consistent with Grant Thornton's having performed an adequate audit and Sachdeva's succeeding in thwarting Grant Thornton's investigation. In this regard, published accounting standards explicitly recognize that an employee can get away with fraud even when the outside auditor conducts an adequate investigation. See Am. Inst. of Certified Public Accountants, Statement on Auditing Standards No. 99, 8-9 (Oct. 2002) ("even a properly planned and performed audit may not detect a material misstatement resulting from fraud"). And in this case, plaintiff alleges that Sachdeva took steps to conceal her fraud from Grant Thornton, including abstaining from making unauthorized transactions from company accounts during the month of June, when Grant Thornton was conducting its audit. The occurrence of the fraud is also consistent with Grant Thornton's having been no worse than negligent in its performance of the audit.

---

disseminated the fraud").

In addition to relying on the occurrence of the fraud, plaintiff argues that Grant Thornton "completely ignored" "numerous red flags" that called attention to Sachdeva's fraud. However, most of the supposed red flags are nothing more than aspects of the fraud itself – i.e., the occurrence of unauthorized transactions and the circumvention of internal controls. (Br. in Opp. [Docket #43] at 18-19.) A red flag is something that calls attention to a fraud, not the fraud itself, and so most of plaintiff's supposed red flags are not actually red flags.

Still, plaintiff does allege a few specific shortcomings in Grant Thornton's audit. First, he alleges that Grant Thornton failed to take a sample of Koss's cancelled checks for the purpose of identifying the entities that endorsed the checks. Plaintiff alleges that if Grant Thornton would have done this it would have seen that many checks were going to retailers of luxury goods rather than to Koss's business partners. Plaintiff also alleges that Grant Thornton failed to cross-check Koss's bank records against its internal journal entries, failed to detect violations of Koss's policy requiring all invoices over $5,000 to be approved by the CEO, failed to detect violations of Koss's policy requiring the CEO to sign all accounts-payable checks, and failed to detect violations of Koss's policy limiting the use of wire transfers to certain kinds of inventory purchases. However, although these specific failures suggest that Grant Thornton may have been negligent in conducting its audit, plaintiff does not explain why these failures give rise to an inference of recklessness. Plaintiff does not, for example, plead facts suggesting that any audit in which the auditor does not confirm the identities of the entities that endorsed the company's cancelled checks is necessarily a sham rather than a true audit. The same goes for the other alleged

failures: why do these failures rise to the level of recklessness rather than stop at negligence?  Plaintiff does not say.

Plaintiff also contends that if American Express was able to uncover Sachdeva's fraud, Grant Thornton must have been reckless in failing to do so.  However, American Express did not immediately catch Sachdeva's fraud.  Rather, Sachdeva was able to pay her American Express bills from Koss bank accounts for years before American Express notified Koss of what was going on.  Further, as plaintiff alleges, Sachdeva took steps to conceal her fraud from Grant Thornton by refraining from making unauthorized withdrawals from accounts Grant Thornton was likely to check.  There is no indication that Sachdeva tried to hide what she was doing from American Express.  Finally, even if the fact that American Express eventually uncovered the fraud suggests that Grant Thornton should have uncovered it earlier, this does not mean that Grant Thornton was reckless.  Again, the most it suggests is that Grant Thornton was negligent.

Finally, as was the case with Michael Koss, plaintiff fails to show that Grant Thornton had a motive to behave recklessly.  Plaintiff points to the fact that Grant Thornton earned more than $650,000 in fees from Koss, and he suggests that this gave Grant Thornton an incentive to overlook Koss's accounting violations.  But this suggestion is at odds with the fact that Sachdeva was using accounting violations to steal from Koss, rather than to help Koss defraud investors.  The usual case in which an accountant's receipt of fees is thought to provide a motive to overlook the company's accounting fraud involves a company that is using aggressive or fraudulent accounting practices to make the company look more attractive to investors.  In this situation, the accountant helps the company enrich itself at the expense of investors so that the company will continue to use

20

the accountant's services in the future.  This line of reasoning has been criticized, <u>see</u> <u>DiLeo v. Ernst & Young</u>, 901 F.2d 624, 629 (7th Cir. 1990), but in this case it makes no sense at all.  Koss would have wanted Grant Thornton to detect Sachdeva's theft (or a theft by any other employee), and so Grant Thornton's reckless failure to be on the lookout for employee theft and accounting fraud would not have helped the company.  If anything, Grant Thornton's receipt of substantial fees from Koss makes it less likely that it would have behaved recklessly.  It suggests that Grant Thornton would have wanted to perform a careful audit to ensure that the stream of fees continued.  As it happened, Grant Thornton missed the fraud and was fired.

Accordingly, considering the allegations against Grant Thornton collectively, the inference that Grant Thornton was reckless in certifying Koss's financial statements is less compelling than the inference that Grant Thornton was merely negligent in failing to detect the fraud.  Plaintiff has therefore failed to plead a strong inference of Grant Thornton's scienter, and so the claim against it will be dismissed.

### 3.  Judicial Notice of Newspaper and Magazine Articles

As part of his § 10(b) and Rule 10b-5 claims against Michael Koss and Grant Thornton, plaintiff asks that I take judicial notice of a number of items.  Many of the items are unobjectionable, and so I do take judicial notice of them.  These items are a letter that Michael Koss wrote to this court in connection with Sachdeva's criminal case, data reflecting Koss's market capitalization, Koss's SEC filings, and published accounting standards.  (<u>See</u> Sams Decl.[Docket #41] Exs. 2-3, 5-6.)  However, the remaining items are a magazine article and a newspaper article concerning Sachdeva, Koss and Grant Thornton.  Defendants object to these items.

The magazine article, which appeared in Milwaukee Magazine, discusses Sachdeva's background, personality, and lifestyle and provides a general overview of the embezzlement.  See Mary Van De Kamp Nohl, The Diva , Milwaukee Magazine, Nov. 2010, at 58.  Various anonymous sources are quoted, and their statements suggest that Michael Koss was lax in his oversight of Sachdeva and the company's accounting practices.  For instance, after noting that Michael Koss denied seeing the merchandise Sachdeva had been buying, the article quotes an anonymous retailer as saying  "I was only [at Koss's headquarters] three or four times a year, and I saw boxes of clothing stacked to the ceiling in the office next door to hers."  Another retailer is quoted as saying that Sachdeva "ran all over" Koss.  The article also quotes an unnamed CFO as saying that "several standard-type controls" could have "easily detected" Sachdeva's fraud.

The newspaper article, which appeared in the Milwaukee Journal Sentinel, raises questions about the quality of Grant Thornton's audit.  See Cary Spivak, Koss auditor faces mountain of questions in fraud case, Milwaukee Journal Sentinel, March 29, 2010, at A1.  The article quotes a local accounting professor, who states that "[t]he fraud is so large, in relation to the size of the company, that I have got to believe that is going to make it very difficult for Grant Thornton to prove that they conducted an audit in accordance with generally accepted auditing standards."  The professor goes on to state that although he is not convinced that Grant Thornton did anything wrong, he would not want to be in its shoes because the public's perception will be that the auditors must have missed something.  The rest of the article is similar, noting that although no one knows whether Grant Thornton's audit was deficient, at the very least Grant Thornton has sustained an injury to its reputation.

In asking that I take judicial notice of these articles, plaintiff claims that he is not offering them for the truth of the matters stated, but only to show that they exist. But what relevance does the articles' existence have to the pending motions? All that their existence tells us is that the subject matter of this case is newsworthy, which says nothing about the defendants' scienter. Moreover, when plaintiff cites the articles in his briefs, he is quite clearly seeking to use them for the truth of the matters asserted, in that he points to the events recounted in the articles as evidence of Koss's and Grant Thornton's recklessness. (Br. in Opp. to Koss [Docket #40] at 18-19, 22; Br. in Opp. to Grant Thornton [Docket #43] at 4-5.) Thus, plaintiff's representation that he is not offering these articles for the truth of their contents is simply false.

Recognizing plaintiff's request to take judicial notice of these articles for what it really is, it is beyond doubt that it must be denied. A court can take judicial notice of a fact only when the fact is so indisputably true that requiring a party to present evidence at trial to establish that fact would be a waste of time. Fed. R. Evid. 201(b); Galina v. INS, 213 F.3d 955, 958 (7th Cir. 2000). Thus, a court can take judicial notice of things like the geographic location of a city or the fact that Latvia regained its independence from the Soviet Union in 1991. Galina, 213 F.3d at 958. The facts stated in the articles are obviously not these kinds of facts. Indeed, such facts would be among the most hotly contested facts in this case were it to proceed to trial. Accordingly, plaintiff's request is denied.

**C.      Liability of Michael J. Koss as a Control Person**

The final question is whether the § 20(a) claim against Michael Koss must be dismissed. Section 20(a) provides that a person who "controls" any person liable under the securities laws is jointly and severally liable for the violation "unless the controlling

person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action." <u>See</u> 15 U.S.C. § 78t(a). Plaintiff alleges that Michael Koss is liable as a person who controlled Koss Corporation.

Control-person liability is a form of secondary liability, and to state a claim under § 20(a), a plaintiff must first adequately plead a primary violation of the securities laws by the controlled person. <u>See, e.g.</u>, <u>Pugh</u>, 521 F.3d at 693. In the present case, plaintiff has satisfied this requirement by pleading that Koss Corporation is liable for Sachdeva's securities fraud under the doctrine of apparent authority. The plaintiff must also plead that the defendant exercised control over the wrongdoer and had the power to control the specific transaction that is alleged to give rise to liability. <u>See</u> <u>Donohoe v. Consol. Operating & Prod. Co.</u>, 30 F.3d 907, 911-12 (7th Cir. 1994). Michael Koss does not dispute that plaintiff has adequately pleaded that he exercised control over Koss Corporation and that he had the power to control the financial-reporting and accounting practices at the company, and so these elements are also satisfied.

In moving to dismiss the § 20(a) claim against him, Koss argues that plaintiff has pleaded facts showing that he acted in good faith. As noted, if the defendant acted in good faith and did not directly or indirectly induce the primary securities violation, he is not liable even if he is shown to have controlled the primary violator. However, as Koss acknowledges, good faith is an affirmative defense rather than an element of plaintiff's case. <u>Donohoe</u>, 30 F.3d at 912. Thus, to state a claim, a plaintiff need not plead facts that negate the good-faith defense. Instead, once the plaintiff pleads the primary violation and that the defendant controlled the primary violator, his job is done. <u>Xechem, Inc. v. Bristol-Myers Squibb Co.</u>, 372 F.3d 899, 901 (7th Cir. 2004) ("[P]laintiffs need not anticipate and

attempt to plead around all potential defenses. Complaints need not contain any information about defenses and may not be dismissed for that omission.") There is an exception to this rule, however, which applies when the plaintiff pleads himself into an impenetrable or ironclad affirmative defense. Foss v. Bear, Stearns & Co., 394 F.3d 540, 542 (7th Cir. 2005). When this happens, the court can dismiss the complaint for failure to state a claim on the ground that the plaintiff has pleaded himself out of court. Xechem, 372 F.3d at 901 ("Only when the plaintiff pleads itself out of court – that is, admits all the ingredients of an impenetrable defense – may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6).").

Michael Koss contends that plaintiff has pleaded facts triggering the good-faith defense by alleging that Koss "did not act with knowledge of Sachdeva's fraud" (Am. Class Action Compl. ¶ 80) and that the Koss board of directors – of which Michael Koss was a member – did not "begin to become aware of the problems in Koss' internal controls and financial statements" until Sachdeva's embezzlement was discovered (id. at ¶ 107). The allegation that Michael Koss did not know of Sachdeva's fraud is not sufficient to trigger the good-faith defense, since a controlling person can be liable if he is reckless in failing to prevent the primary violation. Donohoe, 30 F.3d at 912. As discussed above, plaintiff contends that Michael Koss was reckless in failing to ensure that the company's financial statements did not contain misleading information. While plaintiff has not pleaded facts giving rise to a strong inference that Koss acted recklessly, this does not affect the § 20(a) claim because, as discussed, plaintiff is not required to plead facts negating the good-faith defense. Instead, because plaintiff has sufficiently alleged the elements of a prima facie case under § 20(a), plaintiff is entitled to gather additional facts during discovery, and in

doing so he may uncover information undercutting the good-faith defense. Although this is something of a back door into discovery on the subject of Michael Koss's scienter and thus seems like an end run around the PSLRA, it is allowed. See Makor Issues & Rights, Ltd. v. Tallabs, Inc., 437 F.3d 588, 605 (7th Cir. 2006); In re Nat'l Century Fin. Enters., Inc., 504 F. Supp. 2d 287, 304 (S.D. Ohio 2007) ("The Court's decision to allow the Section 20(a) claims to go forward but to dismiss the Section 10(b) claim reflects the scheme established by Congress. It has imposed a heightened pleading standard for a Section 10(b) claim but not for a Section 20(a) claim." (Internal quotation marks and citation omitted)).

A few words need to be said, however, about plaintiff's allegation that the Koss board of directors did not "become aware of problems in Koss's internal controls and financial statements" until after the discovery of Sachdeva's embezzlement. (Am. Class Action Compl. ¶ 107.) This comes dangerously close to an allegation that Michael Koss was not reckless, and thus very nearly triggers the good-faith defense. Recall that recklessness means either actual awareness of a risk or awareness of facts that would cause a reasonable person to recognize an obvious risk. Tellabs II, 513 F.3d at 704. The risk in this case is the risk that Koss's financial statements contained misleading information, and plaintiff is trying to prove an awareness of the risk by showing that Michael Koss was aware that the company's internal controls were completely unreliable. If the Koss board of directors, which included Koss himself, was not "aware of the problems in [the company's] internal controls" until Sachdeva's fraud was uncovered, then how could Michael Koss have known that the company's internal controls were completely unreliable prior to that time?

I don't think he could have, but this does not mean that plaintiff has pleaded himself into the good-faith defense. The allegation about unawareness of problems in the internal controls appears in the part of the complaint in which plaintiff is pleading his case against Grant Thornton, and plaintiff's claims against Michael Koss and Grant Thornton are somewhat inconsistent with each other. With respect to Koss, plaintiff alleges that the defects in the internal controls were so obvious that Koss must have known about them; with respect to Grant Thornton, plaintiff alleges that Koss had been reasonably relying on Grant Thornton to identify any defects in the company's internal controls. Federal Rule of Civil Procedure 8(d)(3) allows a party to "state as many separate claims or defenses as it has, regardless of consistency," and so the fact that the claims against Koss and Grant Thornton are inconsistent does not mean that either or both of the claims must be dismissed. What this means for present purposes is that facts pleaded in connection with plaintiff's claim against Grant Thornton can be disregarded when considering plaintiff's claim against Koss, and so in alleging as part of his claim against Grant Thornton that Koss did not know about problems in the company's internal controls until after the discovery of Sachdeva's fraud, plaintiff has not pleaded himself into the good-faith defense with respect to Koss. Accordingly, plaintiff's § 20(a) claim against Michael Koss will not be dismissed.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that Koss Corporation and Michael J. Koss's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. The § 10(b) and Rule 10b-5 claim against Michael J. Koss is dismissed. The § 10(b) and Rule 10b-5 claim against Koss Corporation and the § 20(a) claim against Michael J. Koss survive.

**IT IS FURTHER ORDERED** that Grant Thornton LLP's motion to dismiss is **GRANTED**.

Dated at Milwaukee, Wisconsin, this 28th day of July, 2011.

/s_____
LYNN ADELMAN
District Judge